OPINION
{¶ 1} This accelerated calendar case arises from an administrative appeal from the Lake County Court of Common Pleas. Lynn E. Mack, D.D.S. ("Mack"), appeals the trial court's affirmance of an order issued by the Ohio State Dental Board ("Board").
 {¶ 2} Mack is a pediatric dentist who has been in private practice for approximately eighteen years. She is licensed in Ohio and practices in both Lake and Ashtabula Counties.
 {¶ 3} Mack and her husband, Charles Fink ("Fink") had been married for approximately nine years and have one minor child. Mack and Fink had ongoing marital difficulties. Mack contended that Fink had been physically and mentally abusive and had a drinking problem.
 {¶ 4} In May 1999, Fink contacted the Board and told them that Mack was an alcoholic. As a result of that contact, the Board dispensed two enforcement officers to Mack's office, unannounced. Upon arriving at Mack's office, the Board officers informed her that an investigation was underway. Mack and her employees testified at a subsequent Board hearing that the officers told Mack that she had to admit herself to Shepherd Hill Hospital in Newark, Ohio for chemical dependency or they would physically remove her "kicking and screaming" from her office. The officers also stated that if she refused to cooperate she would be "flipping burgers at Denny's" because her license would be revoked.
 {¶ 5} The following day, May 27, 1999, Mack admitted herself to Shepherd Hill Hospital. She remained there, undergoing a chemical dependency treatment program. On June 24, 1999, a Board enforcement officer visited Mack at Shepherd Hill and informed her that Shepherd Hill personnel had told him that Mack was "doing well" and would be released soon. At that visit, the Board officer presented Mack with a consent agreement. The officer told Mack that if she voluntarily signed the agreement the Board would not institute disciplinary proceedings against her. Mack signed the agreement during that visit. The Board ratified the consent agreement at a meeting on July 29, 1999.
 {¶ 6} Mack continued her inpatient treatment at Shepherd Hill throughout July and August 1999. However, she was subsequently discharged on September 1, 1999, for not complying with the "100% compliance contract" she had entered into. Specifically, Mack returned from a weekend at home with caffeinated coffee and had been using her cell phone while at Shepherd Hill, in violation of the program rules.
 {¶ 7} After her discharge from Shepherd Hill, Mack retained an attorney who attempted to resolve the matter through ongoing correspondence with counsel for the Board. The Board refused to authorize her to return to practice and refused to consider the matter further until December 2, 1999, at its regularly scheduled meeting.
 {¶ 8} On October 21, 1999, Mack returned to her dental practice. On November 5, 1999, Mack filed a declaratory judgment action in the Franklin County Court of Common Pleas, alleging the Board and its members, in their official and individual capacities, under color of state law, willfully and maliciously violated, and continued to violate, her civil and constitutional rights, causing her severe emotional and financial damages and damage to her reputation in the dental community.[1] The Franklin County Court subsequently granted the Board's motion to dismiss, holding that the matter was one that must first be resolved by the Board through its administrative proceedings. Following its December meeting, the Board instituted disciplinary proceedings against Mack.
 {¶ 9} The Board issued a notice of opportunity for hearing to Mack on December 2, 1999. A hearing was conducted on May 15, 2000, before a hearing examiner, who submitted his report and recommendation on June 27, 2000. Mack filed objections to the hearing examiner's report. On August 9, 2000, the Board issued an adjudicatory order, adopting the report and ordering Mack to comply with all of the terms of the consent agreement. The terms of the consent agreement provided that Mack would not be allowed to practice dentistry until formally reinstated by the Board. Moreover, prior to reinstatement, Mack had to provide documentation that she had successfully completed alcohol rehabilitation treatment as well as documentation demonstrating that she had undergone continuous participation in a drug and alcohol rehabilitation program. The agreement also provided that, after Mack became eligible for reinstatement, her license would be suspended for 180 days, 150 days of which would be stayed, during which her license would be subject to probation.
 {¶ 10} Mack appealed the Board's order to the Lake County Court of Common Pleas and requested a stay of the order pending her appeal. On August 17, 2000, the court granted her request for a stay pending her appeal. On May 22, 2001, the court issued its judgment entry affirming the Board's order. Mack then filed this appeal, citing two assignments of error.
 {¶ 11} Mack's first assignment of error is:
 {¶ 12} "The trial court erred to the prejudice of the appellant in affirming the Board's order when the order was not supported by reliable, probative and substantial evidence."
 {¶ 13} Mack contends that the trial court erred in affirming the Board's order, finding that Mack was practicing dentistry while her license was under suspension by the Board, because her license was never suspended by the Board. The thrust of Mack's argument is that the consent agreement she entered into with the Board did not constitute a suspension of her license.
 {¶ 14} An appeal from an administrative agency in Ohio is governed by R.C. 119.12, which reads in pertinent part:
 {¶ 15} "The court may affirm the order of the agency complained of in the appeal if it finds, upon consideration of the entire record and such additional evidence as the court has admitted, that the order is supported by reliable, probative, and substantial evidence and is in accordance with law."
 {¶ 16} Thus, when reviewing a decision by an administrative agency, the common pleas court may not substitute its judgment for that of the agency where the record is supported by reliable, probative, and substantial evidence and is in accordance with law.[2]
 {¶ 17} The Supreme Court of Ohio has defined "reliable, probative, and substantial evidence" as:
 {¶ 18} "The evidence required by R.C. 119.12 can be defined as follows: (1) `Reliable' evidence is dependable; that is, it can be confidently trusted. In order to be reliable, there must be a reasonable probability that the evidence is true. (2) `Probative' evidence is evidence that tends to prove the issue in question; it must be relevant in determining the issue. (3) `Substantial' evidence is evidence with some weight; it must have importance and value."[3]
 {¶ 19} Moreover, pursuant to R.C. 119.12, this court's inquiry is limited to determining whether the trial court abused its discretion in finding that the Board's order is supported by reliable, probative, and substantial evidence and is in accordance with law. Abuse of discretion "`connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable.'"[4]
 {¶ 20} The consent agreement signed by Mack reads in pertinent part:
 {¶ 21} "DR. MACK is not permitted to practice dentistry, until such time as reinstated by the Board."
 {¶ 22} At the hearing before the Board, Mack presented the testimony of Wally McLaughlin, an enforcement supervisor of the Board from 1985 to 1999 and one of the investigators who originally arrived at Mack's office. McLaughlin testified that the Board specifically omitted the term "suspension" from the agreement so that it would not constitute a suspension. He also testified that in October 1998, the Board explicitly deleted the term "suspension" from its consent agreements for the express purpose of ensuring that the dentist's license would not be under suspension.
 {¶ 23} McLaughlin testified:
 {¶ 24} "The reasoning was the — in doing interventions on chemically dependent dentists, what we tried to do, we were trying to do was get the dentist into treatment and we were having some problems as far as getting the doctor out of the office because he knew if he went into treatment, that the treatment could last two to three months or four months.
 {¶ 25} "And so we decided that rather than suspending the license, which meant if the license was suspended, the doctors' office basically was — he was not able to hire anybody who [sic] went with the language `not permitted to practice', therefore, we could keep the office open, the doctors go through treatment, get his treatment, get well and get back without losing his whole dental practice. That's the reason the language was changed."
 {¶ 26} The hearing examiner determined, however, that since the term "suspension" was not defined in the Dental Practice Act, Chapter 4715 of the Revised Code, the word must be attributed its normal meaning. Therefore, the examiner found that a "suspension" is "the temporary interruption of an activity." The examiner concluded that the consent agreement required Mack to "temporarily interrupt her practice of dentistry" while she was being treated and, as such, "the agreement called for Dr. Mack's suspension from the practice of dentistry, until she is reinstated by the Board."
 {¶ 27} R.C. 4715.30 governs disciplinary actions which may be taken by the Board. It reads, in pertinent part:
 {¶ 28} "(C) Subject to Chapter 119. of the Revised Code, the board may take one or more of the following disciplinary actions if one or more of the grounds for discipline listed in divisions (A) and (B) of this section exist:
 {¶ 29} "* * *
 {¶ 30} "(3) Suspend the certificate or license[.]"
 {¶ 31} Thus, according to the statute, the Board may elect to suspend a dentist's license as a form of disciplinary action for misconduct. A review of the record in this case, including the consent agreement, reveals no evidence that the Board ever formally suspended Mack's dental license. Although the Board contends that the consent agreement provided that Mack "agreed not to practice," it concedes that the term "suspension" is nowhere in the agreement. Moreover, McLaughlin's testimony regarding the decision by the Board to remove the term "suspension" from such consent agreement was never challenged by the Board at the hearing, but, rather, the Board conceded that it affirmatively removed the term "suspension" to avoid the difficulties associated with a suspension, namely, the inability of the dentist to keep her office open by hiring another dentist to work in the office.
 {¶ 32} Therefore, we find no evidence in the record to support the conclusion that the Board suspended Mack's dental license. The Board removed any reference to the term "suspension" in its consent agreement and chose to replace it with other language that lacked the same legal significance. As such, the consent agreement entered into by Mack did not constitute a formal suspension of her dental license. The Board lacked reliable, probative, and substantial evidence to institute disciplinary proceedings against Mack for practicing dentistry under a suspended license.
 {¶ 33} Mack's first assignment of error has merit.
 {¶ 34} Mack's second assignment of error is:
 {¶ 35} "The trial court erred to the prejudice of appellant by finding that the Board's order is in accordance with law."
 {¶ 36} In its judgment entry, the trial court held, "[t]his court sees no illegality in the consent agreement not (sic) the adjudicatory order." The court went further stating that the Board's order was "well supported by reliable, probative and substantial evidence and in accordance with law."
 {¶ 37} In its adjudication order, the Board held that the consent agreement constituted a suspension of Mack's license:
 {¶ 38} "In a document which Dr. Mack executed on June 24, 1999, and which the Board approved on July 29, 1999, Dr. Mack consented to terms that prohibited her from practicing dentistry until such time as she is reinstated by the Board. Although such a characterization is disputed now by Dr. Mack, I find that by the terms of the agreement Dr. Mack's license to practice dentistry was placed under suspension effective July 29, 1999."
 {¶ 39} For the foregoing reasons, stated supra, we hold that the consent agreement did not constitute a suspension of Mack's dental license. Thus, the trial court erred in affirming the Board's adjudicatory order.
 {¶ 40} Mack's second assignment of error has merit.
 {¶ 41} This court finds that the consent agreement entered into by Mack did not constitute a valid suspension of her dental license. Therefore, as a matter of law, Mack was not practicing while "under suspension."
 {¶ 42} The judgment of the trial court is reversed, and the matter is remanded to the trial court to enter judgment consistent with this opinion.
JUDITH A. CHRISTLEY and ROBERT A. NADER, JJ., concur.
[1] Mack v. Ohio State Dental Bd. (Mar. 30, 2001), 10th Dist. No. 00AP-578, 2001 Ohio App. LEXIS 1513.
[2] Arlen v. State (1980), 61 Ohio St.2d 168, 175.
[3] Our Place, Inc. v. Ohio Liquor Control Comm. (1992),63 Ohio St.3d 570, 571.
[4] Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219, quoting Statev. Adams (1980), 62 Ohio St.2d 151, 157.